# SUPREME COURT OF ARKANSAS

**No.** CR-15-658

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 13, 2017 |
| ANTONIO WILLIAMS | APPELLANT | PRO SE APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [60CR-12-653] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | |
| | | HONORABLE HERBERT T. WRIGHT, JR., JUDGE |
| | | AFFIRMED. |

## PER CURIAM

In 2013, a jury found appellant Antonio Williams guilty of capital murder for the death of Kelvin Lott Shelton, and he was sentenced to life without parole, with an additional sentence enhancement of eighty-four months' imprisonment for employing a firearm in commission of the crime. This court affirmed. *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483. Williams filed in the trial court a timely pro se petition under Arkansas Rule of Criminal Procedure 37.1 (2016). Williams retained counsel, and with the trial court's permission, counsel amended the petition. After an evidentiary hearing, the trial court denied the amended petition, and still represented by counsel, Williams lodged an appeal in this court. Counsel was relieved, and with Williams proceeding pro se, the matter has now been briefed. We affirm the trial court's order denying postconviction relief.

This court will not reverse a trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Houghton v. State*, 2015 Ark. 252, 464 S.W.3d 922; *Kemp*

*v. State*, 347 Ark. 52, 60 S.W.3d 404 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Turner v. State*, 2016 Ark. 96, 486 S.W.3d 757.

In his Rule 37.1 petition, Williams raised two claims of ineffective assistance of counsel. He first alleged that trial counsel failed to call an alibi witness, Daquasha Johnson. In his second claim, Williams alleged that counsel was ineffective for allowing the introduction of evidence concerning the identification of Williams by Torrece Graydon as an eyewitness to an incident with Shelton leading up to Shelton's murder. The identification was made prior to trial from a photo array, and the trial court had suppressed the evidence on a defense motion.

On the first claim, the trial court found that counsel was not ineffective, that Williams's assertion that he was not present at the scene of the crime was undercut by evidence introduced at his trial, and that Williams's testimony that he had told his attorney about Johnson before his trial during the Rule 37 hearing was not credible. On the second claim, the trial court found that counsel had attempted to have both the photo array and any in-court identification by the eyewitness suppressed; that counsel had testified that, when the in-court identification was not suppressed, he was forced to use the photo-array evidence in order to provide the jury with an explanation for the eyewitness's in-court identification of Williams, and that, because this decision to introduce the photo-array evidence was reasonable trial strategy, counsel was not ineffective.

Our standard for ineffective-assistance-of-counsel claims is the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Rasul v. State*, 2015 Ark. 118, 458 S.W.3d 722. To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Mister v. State*, 2014 Ark. 446. Unless a petitioner makes both showings, the allegations do not meet the benchmark on review for granting relief on a claim of ineffective assistance. *Houghton*, 2015 Ark. 252, 464 S.W.3d 922.

Counsel is presumed effective, and allegations without factual substantiation are insufficient to overcome that presumption. *Henington v. State*, 2012 Ark. 181, 403 S.W.3d 55. A petitioner claiming deficient performance must show that counsel's representation fell below an objective standard of reasonableness, and this court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* A petitioner has the burden of overcoming the presumption that counsel is effective by identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

To prevail on a claim of ineffective assistance of counsel, a petitioner must also show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's alleged errors in order to meet the second prong of the test. *Sales v. State*, 2014 Ark. 384, 441 S.W.3d 883. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* In assessing prejudice, courts "must

consider the totality of the evidence before the judge or jury." *Rasul*, 2015 Ark. 118, at 7, 458 S.W.3d at 727 (quoting *Strickland*, 466 U.S. at 695).

A brief recitation of some of the evidence at trial is helpful in understanding the issues presented.[1] Graydon testified that she and Shelton had gone to meet with someone Shelton had described to her and called "Big Mike." Shelton planned to sell him some marijuana. "Big Mike" is Williams's brother, Michael Williams. Both brothers have burn scars on their faces from a fire when they were children. Graydon testified that Shelton had parked behind a car for the meeting with Big Mike and that, initially, two men had gotten out of the car and into the backseat of the Jeep that Shelton was driving. After Shelton showed the men the marijuana, they went back to the car to get approval for the purchase. They came back with a third man, who got into the Jeep's backseat while the other two men stood outside. The third man placed a gun to Shelton's head and demanded the drugs. Graydon got out of the Jeep, and she heard gunshots as she fled. Shelton was found dead in the Jeep after Graydon had alerted the police. After the incident, Graydon told the police that the man with the gun had scars on his face.

On appeal, Williams reiterates his claims from the petition and asserts that the trial court's interpretation of *Strickland* was unreasonable. Concerning his first ineffective-assistance claim, Williams contends that trial counsel failed to investigate sufficiently to discover Johnson's testimony. As to the second prong of the *Strickland* test, Williams alleges that Johnson would have testified that Williams was at his house with her at the time of the

---

[1] We may take judicial notice of the record from the direct appeal without need to supplement the record. *Flemons v. State*, 2016 Ark. 460, 505 S.W.3d 196 (per curiam).

crime and his brother was not, that the testimony would have raised reasonable doubt and discredited Graydon's testimony, and that he was therefore prejudiced by counsel's failure to discover and present Johnson's testimony at trial.

Despite Williams's assertions that there was deficient performance and prejudice, the trial court's factual findings support its apparent conclusion that Williams failed to satisfy either prong of the two–part *Strickland* test, and those findings were not clearly erroneous. The trial court specifically stated that it found not credible Williams's testimony at the Rule 37 hearing that he had told his attorney that Johnson could provide alibi testimony. In rendering its decision, the trial court was not required to accept Williams's testimony as truthful, and this court does not assess the credibility of witnesses on appeal. *Smith v. State*, 2016 Ark. 417, 504 S.W.3d 595.

Williams's trial attorney testified at the Rule 37 hearing that he had investigated the witnesses that Williams had given him, although he did not recall specifically whether he had talked to Johnson. He did remember that all of the alibi witnesses had placed both Michael and Williams at the house and that they were more certain about the fact that Michael was there. Because the defense strategy was based on the possibility that Michael had committed the murder, counsel concluded that all of the testimony would be more harmful than helpful.

On appeal, Williams appears to contend that, even if the trial court did not believe his testimony, counsel had failed to investigate sufficiently to discover Johnson's potential testimony. When counsel was questioned at the Rule 37 hearing about whether other alibi witnesses had mentioned Johnson's presence at the house, however, counsel indicated that

he did not specifically recall, but that if he had understood that there was anyone who could have said Williams was at the house, he would have spoken to them.  In denying the claim, the trial court referenced this testimony and appears to have concluded that counsel was credible in testifying that he would have spoken to Johnson if her name had been mentioned.  When there is conflict that presents an issue of credibility, it is the trial court's task as trier of fact to resolve it, and, especially where the petitioner in a Rule 37 proceeding has the most interest in the outcome of the proceeding, the court is free to believe all or part of any witness's testimony.  *Jones v. State*, 2014 Ark. 448, 486 S.W.3d 743 (per curiam).  We will not overturn the decision of the trial court in a matter based on an assessment of credibility by the trier of fact.  *Id.*

Moreover, the trial court's findings support a determination that Williams did not demonstrate prejudice from counsel's failure to discover Johnson's potential testimony.  In assessing prejudice, we consider the totality of the evidence before the jury.  The trial court pointed to evidence admitted at trial that undercut any potential testimony by Johnson that Williams was not at the crime scene.  This included evidence that Williams told his sister that he was at the crime scene but that he had not shot Shelton.  The trial court also pointed to tapes of Williams's conversations with his mother while he was incarcerated.  During these conversations, Williams appeared to ask his mother to have someone offer Graydon money in return for an affidavit stating that he was not at the crime scene.  Later, Williams spoke of having prepared a letter to send to a judge, once again averring that he had been at the scene of the murder but had not shot Shelton and did not know what was going to happen.  In addition to the evidence noted, a statement Michael made to the police was

admitted in which Michael stated that Williams had also come to him after the murder in an emotional state and that Williams had told the same story about being present during the murder when another individual shot Shelton. In light of this offsetting evidence, Williams has not shown that Johnson's potential testimony would have been of any significant value to his defense. Williams therefore did not demonstrate that, but for counsel's failure to present her testimony, there was a reasonable probability that the fact-finder's decision would have been different.

In his second point on appeal, Williams alleges that it was error for the trial court to find that trial counsel made a reasonable strategic decision to introduce the evidence of the photo-array identification. Williams appears to argue that, once the evidence had been excluded, it could not be admitted, that both identifications, including the one Graydon made in court, were unreliable, and that his counsel needed his waiver to have the evidence admitted.

To the extent that Williams would directly challenge the trial court's original ruling on the admissibility of the in-court identification, the issue is not one cognizable in Rule 37 proceedings. *Chatmon v. State*, 2016 Ark. 126, 488 S.W.3d 501 (per curiam) (holding that claims of trial error such as improper admission of prejudicial evidence are not grounds for relief under Rule 37.1); *see also State v. Rainer*, 2014 Ark. 306, 440 S.W.3d 315 (noting that this court has held that allegations of a due-process violation based on alleged trial error regarding the admissibility of evidence are not cognizable in Rule 37 proceedings). Moreover, this court previously considered the issue on direct appeal and rejected the argument. The law-of-the-case doctrine dictates that issues concluded in a prior appellate

decision may not be revisited in a subsequent proceeding because the matter becomes res judicata. *Green v. State*, 343 Ark. 244, 33 S.W.3d 485 (2000). This is true even if the decision was wrongly decided. *Id*. Williams therefore cannot now challenge the trial court's admission of the in-court identification.

While the trial court had granted the defense motion to bar the prosecution from using the evidence of the photo array for the purpose of establishing Graydon's identification of Williams as the man with the gun, it did not rule that the defense could not waive its objection to the introduction of the evidence to serve a different purpose, that is, in order to counter an in-court identification of Williams by Graydon. Trial counsel made plain in his argument against admission of an in-court identification that he would feel compelled to adopt such a strategy if the trial court did not exclude any in-court identification, and counsel renewed his objection to the in-court identification at the time that the photo array was introduced with the same argument. Counsel also testified at the Rule 37 hearing that he had been forced to use the photo-array evidence in order to provide the jury with an explanation for the eyewitness's in-court identification of Williams. The trial court found that this decision to allow the introduction of the photo-array evidence was reasonable trial strategy.

Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for finding ineffective assistance of counsel. *Hartman v. State*, 2017 Ark. 7, 508 S.W.3d 28. When a decision by trial counsel is a matter of trial tactics or strategy and that decision is supported by reasonable professional judgment, then such a decision is not a proper basis for relief under Rule 37. *Van Winkle*

*v. State*, 2016 Ark. 98, 486 S.W.3d 778. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Hartman*, 2017 Ark. 7, 508 S.W.3d 28.

Counsel made a deliberate decision to allow introduction of the evidence, and he provided his specific reasoning for doing so. In order for the defense theory to be successful, countering the in-court identification of Williams was, as counsel indicated, crucial. Williams does not suggest any alternative tactic that may have been implemented by counsel. We cannot conclude that the trial court was clearly erroneous in determining that counsel's decision was one of reasonable trial strategy. Even if counsel's tactical choices had been different with the benefit of hindsight, the fact that the strategy was unsuccessful does not render counsel's assistance ineffective. *See id.*

As for Williams's assertion that counsel had an obligation to obtain his express waiver before adopting the strategy of admitting the pretrial identification to counter the in-court identification, he misconstrues the case he cites for that proposition. In *Florida v. Nixon*, 543 U.S. 175 (2004), the United States Supreme Court noted that an attorney has a duty to consult with the client regarding important decisions, including overarching defense strategy. Williams does not take issue with trial counsel's overarching strategy to suggest that his brother was the gunman. He contends, however, that counsel should not have employed the tactic used to counter the in-court identification.

In *Nixon*, the Court acknowledged that an attorney has authority to manage most aspects of the defense without obtaining his client's approval and need not obtain consent to every tactical decision, citing *Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988). *Nixon* does

not stand for the proposition that express consent is required in circumstances like those in this case, and it does hold that, unless the alleged error in adopting an unsuccessful strategy amounts to a failure to function in any meaningful sense to oppose the State's case, the defendant asserting that counsel was ineffective must show that the strategy was unreasonable and prejudiced him. *Nixon*, 543 U.S. 175. Williams failed to make either showing.

Affirmed.

*Antonio Williams*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Driver Younger*, Ass't Att'y Gen., for appellee